## Commonwealth ex rel., Appellant, *v.* Johnston.

*Criminal law—Indictment—Felonious entry into a building.*

An indictment which charges that the prisoner, "with force and arms, feloniously did wilfully and maliciously enter the building of the Carnegie Steel Company, an association of limited partnership under the laws of this state, there situate, with intent to commit a felony in said building, contrary to the form," etc., is sufficient in substance under the Act of April 22, 1863, sec. 2, P. L. 531, which reads: "If any person shall in the day time, break and enter any dwelling house, shop, warehouse, store, mill, barn, stable, outhouse or other building, or wilfully and maliciously, either by the day or by night, with or without breaking, enter the same, with intent to commit any felony therein, the person so offending shall be guilty of felony." If the defendant desires more specific information as to the nature of the building, he may obtain it by proper application to the court for a bill of particulars. If he fails to do so and pleads, and goes to trial on the merits and is convicted, he cannot in a habeas corpus proceeding set up the insufficiency of the indictment as a ground for asserting that he is restrained of his liberty unlawfully and against due course of law.

Argued Dec. 2, 1901.   April T., 1902, No. 1.

Petition for rule for habeas corpus in case of Commonwealth ex rel. Alexander Bergman v. William Mc.C. Johnston, Warden of the Western Penitentiary of Pennsylvania.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.

*John Marron,* of *Marron & McGirr,* for the relator.

*William B. Rodgers,* contra.

OPINION BY RICE, P. J., January 21, 1902:
It appears by the petition and answer that the petitioner is

now confined in the western penitentiary by virtue of commitments in execution of judgments of the court of quarter sessions of Allegheny county upon three several indictments, laid on different days, each of which charged that the petitioner "with force and arms, feloniously did wilfully and maliciously enter the building of the Carnegie Steel Company, an association of limited partnership under the laws of this state, there situate, with intent to commit a felony in said building, contrary to the form," etc.    The petitioner claims that he is being unlawfully restrained, and is entitled to discharge upon habeas corpus, because the indictments upon which the judgments were entered charged no offense indictable under the common law or the statute law of Pennsylvania.

It is apparent upon inspection of the copies of the indictments set forth in the petition that the crime intended to be charged was that prohibited by section 2 of the Act of April 22, 1863, P. L. 531.    The defendant could not fail to understand that this was the specific charge he was called upon to meet.    In this material particular the case differs from Hollister v. Commonwealth, 60 Pa. 103, where the Supreme Court said: "It would not do to hold a defendant convicted on an indictment in form for burglary, strictly, liable to be sentenced under this section (136) by changing the averments, or assuming them to be so changed to suit the conviction."    The section, so far as material here, reads as follows: "If any person shall, in the day time, break and enter any dwelling house, shop, warehouse, store, mill, barn, stable, outhouse or other building, or wilfully and maliciously, either by day or by night, with or without breaking, enter the same, with intent to commit any felony whatever therein, the person so offending shall be guilty of felony," etc.    It cannot be successfully claimed that this crime cannot be committed in any other building than those specifically mentioned.    It is too plain for argument, that the word "building" was inserted in the act for a purpose, and cannot be struck out by judicial construction.    The question is, whether the omission to specify in the indictment the character, or other description, of the building is such a defect as vitiates the judgment.    It is to be noticed that this is a statutory crime, that is to say, the crime that is prohibited is defined by the statute.

In discussing this question, we are not to be understood as

passing on the sufficiency of an indictment in the case of a statutory prohibition of a common-law offense by name, without further description, as for example, larceny, where the statute does not define what larceny is. Where the offense is purely statutory, having no relation to the common law—where, in other words, the statute specifically sets out what acts shall constitute the offence,—it is, as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter: 1 Bish. Cr. Proc. sec. 611. This principle is embodied in section 11 of the criminal procedure act of 1860, which provides that every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of assembly prohibiting the crime and prescribing the punishment if any such there be. This rule as applied by the courts of this commonwealth works no hardship and infringes no constitutional right of the accused; for, whenever one before trial needs more specific information than is contained in the indictment, to enable him to make just defense, it may be obtained on proper application to the court for a bill of particulars: Williams v. Commonwealth, 91 Pa. 493; Commonwealth v. Buccieri, 153 Pa. 535, 547; Commonwealth v. New Bethlehem Boro., 15 Pa. Superior Ct. 158, 164, and cases there cited. This is none the less true because the application for a bill of particulars is addressed to the sound discretion of the court. The remedy for the correction of formal defects in an indictment is by demurrer or motion to quash before the swearing of the jury "and not afterwards, and every court before whom any such objection shall be taken for any formal defect, may, if it be thought necessary, cause the indictment to be amended in such particular, by the clerk or other officer of the court, and thereupon the trial shall proceed as if no such defect appeared:" Section 11 of the criminal procedure act of 1860. But if the accused elects to take issue on the merits and is condemned, "there seems neither moral nor legal fitness in permitting him to urge formal exceptions, which, if suggested at an early period, would have been promptly corrected:" Report on the Penal Code.

The same principle applies with equal force, where the indict-

ment, although drawn in the very words of the act and free from any formal defect, fails to give the information which the accused thinks he ought to have to enable him to make just defense. As already shown he has his remedy, and it is adequate. These indictments charge all the essentials of the crime, and in describing the place entered as the "building" of the Carnegie Steel Company, they use the word that is used in the statute. There was, therefore, not only substantial, but literal, compliance with the provisions of section 11 of the criminal procedure act. If the omission to specify what kind of a building this was, where it was situated and to what uses it was put, was a defect, it was at the most only a formal defect, and was amendable. As to the general rule that formal defects, not objected to before swearing the jury are cured by the plea and cannot afterwards be taken advantage of, it is unnecessary to cite authorities. But we may appropriately refer to the case of Commonwealth v. Newcomer, 49 Pa. 478, which is directly in point. There the court arrested the judgment because in its opinion the "agent" as used in section 114 of the penal code was limited to one who follows the business of an agent, a professional agent, and because the indictment did not so describe the defendant. The case was taken to the Supreme Court on writ of error and the question above suggested was elaborately argued by counsel, but the court said, that, in view of the fact that the indictment was drawn in the very words of the act describing the crime and the criminal, "it was difficult to see how the question argued here could be raised upon writ of error when we have nothing but the indictment before us." Upon this ground, and without deciding the question, the court held that it was error to arrest the judgment.

Pursuing the same course of reasoning that was followed in that case, we may conclude the discussion by saying, that the indictments are not defective in substance, and if defective in form, the defect was cured by the plea; and that, if the evidence given on the trial did not show that the place which was entered with felonious intent was a "building" within the meaning of the statute, the defendant's remedy was by request for binding instructions, exception to the ruling, if the request was refused, and appeal, or by motion for new trial. The indictments being sufficient on their face to give

the court jurisdiction to enter the judgments, we must presume in this proceeding that all the issues of law and fact were correctly decided.

It follows that as no probable cause is shown for believing that the petitioner is restrained of his liberty unlawfully or against due course of law, the rule must be discharged.

Rule discharged.